UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARK PASTERNAK,

                         Plaintiff,

      -vs-                                    00-CV-0369C(Sc)

TOMMY E. BAINES, Individually and in his official capacity; and JOHN A. JOHNSON, in his official capacity as Commissioner of The New York State Office of Children and Family Services,

                         Defendants.

---

APPEARANCES:        LAW OFFICE OF DAVID J. SEEGER (ALISON ODOJEWSKI, ESQ., OF COUNSEL), Buffalo, New York, for Plaintiff.

                              WILLIAM R. HITES, ESQ., Buffalo, New York, for Defendant Baines.

                              ELIOT SPITZER, ATTORNEY GENERAL OF THE STATE OF NEW YORK (MICHAEL J. RUSSO, Assistant Attorney General, of Counsel), Buffalo, New York, for Defendant Johnson.

**INTRODUCTION**

Plaintiff brings this employment discrimination action against defendants pursuant to Title 42 U.S.C. §§ 1981and 1983 and the New York State Human Rights Law, N.Y. Exec. Law § 296, *et seq.* Plaintiff, who is Caucasian, was employed as a youth aide by the New York State Office of Child and Family Services ("NYSOCFS") beginning in 1976. Defendant Baines, an African-American, was plaintiff's supervisor from 1995. Defendant Johnson, who is sued in his official capacity only, is the Commissioner of the NYSOCFS. Plaintiff alleges that Baines waged a three-year campaign of harassment and retaliation,

which included race-based slurs and epithets, job sabotage, and the fostering of animosity against Pasternak by his co-workers. After he took a series of medical leaves of more than one year's duration, plaintiff's employment was terminated pursuant to the Civil Service Law. Plaintiff alleges that he was constructively discharged from the position. Both defendants have moved for summary judgment dismissing the complaint.

## BACKGROUND and FACTS

According to his deposition, plaintiff began his employment with the New York State Division for Youth in 1978 and in 1994 became a Youth Division Aide ("YDA") III. Pasternak Dep., Item 46, Exh. 1, pp. 14-15. In July 1995, defendant Baines became plaintiff's supervisor at the Buffalo Evening Reporting Center ("ERC"), a NYSOCFS facility in Buffalo, New York. *Id.*, p. 56. Plaintiff alleges that Baines waged a three-year campaign of race-based harassment and retaliation against him, finally resulting in plaintiff's constructive discharge.

Specifically, in his deposition, plaintiff states that in October 1995, Baines referred to an outside auditor as a "red neck white boy from Kentucky." *Id.*, p. 101. In November 1995, Baines referred to plaintiff as a "stupid Polack." *Id.*, p. 99. In January 1996, plaintiff attended a training session in Rochester, New York. In the middle of the day, Baines telephoned the training session and ordered plaintiff to leave. When plaintiff later asked why he was ordered to leave the session, Baines allegedly told plaintiff, "you're white, I don't like white boys so handle it." *Id.*, p. 103. In December 1996, Baines allegedly referred to a former football teammate as a "big smart old white boy . . . ." *Id.*, p. 106. In January or February 1997, Baines changed the locks on an office door and file cabinets

to which Pasternak was to have access. When plaintiff asked Baines why he did this, Baines allegedly replied, "I don't like white boys, handle it." *Id.,* p. 107. In March or April 1996, plaintiff heard Baines telling plaintiff's African-American co-workers that "the brothers" were working while the "white boy" was not. *Id.,* p. 109. In January or February 1997, plaintiff heard Baines say that he was going to "get the rats[,] especially the white boy." *Id.,* p. 110. Additionally, in March or April 1997, Baines referred to plaintiff as "Pasterat" in both a memorandum and on a telephone answering machine. *Id.,* p. 111.

In response to plaintiff's complaints, the Special Investigations Unit of the NYSOCFS conducted an investigation into the allegations of misconduct by Baines. Plaintiff and several co-workers were interviewed. In a report dated April 21, 1998 (Item 51, Exh. A), the investigator concluded that Baines referred to plaintiff in racial terms and encouraged staff to band together against the "white boy," that Baines referred to plaintiff as "Pasterat" in a memo and on the facility answering machine, and that Baines interrupted an investigative interview of plaintiff regarding the allegations against Baines, invading plaintiff's personal space in an attempt to upset plaintiff. *Id.* As a result of this investigation, Baines was fined $2,000.00 by the NYSOCFS.

Plaintiff filed a Workers' Compensation claim alleging that he suffered a work-related psychiatric stress disorder as the result of Baines' harassment. Afer a hearing, the judge found "overwhelming evidence that the Claimant was subjected to harassment and offensive conduct from his supervisor that goes far beyond the usual give and take of the workplace or lawful personnel practice or job evaluation." Item 51, Exh. B.[1]

---

[1] Plaintiff does not ask this court to give preclusive effect to either the findings of the Workers' Compensation Board or the NYSOCFS Special Investigations Unit, but notes that his arguments are

In an affidavit in response to the motions to dismiss, plaintiff reiterated his complaints about Baines. Plaintiff states that Baines referred to him in racially derogatory terms, to plaintiff himself and to others. Item 63, ¶¶ 3, 28; Exh. C., pp. 5-8. Plaintiff also states that Baines intentionally misplaced documents on nine occasions between March 1996 and August 1997 to increase plaintiff's work load. Item 63, ¶ 18; Exh. C, pp. 8-10. Plaintiff further states that Baines changed the locks on the door to plaintiff's office and file cabinets without notice. Plaintiff alleges that Baines told plaintiff's co-workers that plaintiff had made disparaging remarks about the co-workers' family members. Item 63, ¶¶ 19-20. Baines also told plaintiff's co-workers that plaintiff's complaints regarding Baines' harassment could lead to the closing of the ERC and loss of employment. *Id.,* ¶ 22. Plaintiff states that Baines attempted to harass and intimidate him when Baines entered a meeting in January 1998, and came within an inch of plaintiff. Item 63, ¶ 29.

In his affidavit, plaintiff states that he began to suffer insomnia, mood swings, and depression. Item 63, ¶ 34. In February 1997, plaintiff sought counseling. His doctor attributed plaintiff's mental state to plaintiff's workplace harassment, and prescribed an anti-depressant medication. *Id.,* ¶¶ 35-38. Plaintiff took two leaves of absence, from April 24, 1997 through May 20, 1997 and September 19, 1997 through January 24, 1998. He returned on January 25, 1998, but then left again on January 28, 1998. *Id.,* ¶¶ 39-40. Plaintiff's employment was officially terminated on February 12, 1999 as a result of a medical leave of absence of one year. *Id.,* ¶ 41; Item 41, ¶ 2.

---

"bolstered" by their findings. Item 51, p. 13. The court has considered these findings, and notes that preclusion would not be appropriate under New York law as the issues in those proceedings are not identical to those that must be determined here. *See Bland v. New York*, 263 F. Supp. 2d 526, 552 (E.D.N.Y. 2003); *Tout v. County of Erie*, 2 F. Supp. 2d 320, 330 (W.D.N.Y. 1998).

Plaintiff, a Salary Grade 12 Civil Service employee, states that he was offered a temporary part-time Grade 9 position with NYOCFS in Rochester, but declined the position. Item 63, ¶¶ 47-48. Plaintiff states that he could not relocate to Rochester for family reasons and did not want to work with Baines, who had been transferred to the Rochester facility. *Id.,* ¶¶ 49-52. Plaintiff states that at least two positions in Erie County were available after 1999, but that he was neither interviewed nor hired for those positions. *Id.,* ¶ 76.

In a declaration filed March 25, 2005, Bonnie Delmarsh, associate personnel administrator with NYSOCFS, stated that plaintiff's employment was terminated in February 1999 due to an absence of one year based on a medical disability. Item 41, ¶ 2. Plaintiff applied for Workers' Compensation benefits and was granted such benefits. *Id.* Pursuant to New York Civil Service Law § 71, plaintiff was examined by the New York State Department of Civil Service's Employee Health Services and was found to be fit to return to work. Accordingly, in June 2000, plaintiff's name was placed on a preferred list for employment as a YDA. *Id.* From June 2000 to January 2002, no full-time YDA positions were filled in Buffalo. In a later declaration, Ms. Delmarsh stated that plaintiff was offered a permanent full-time Grade 12 position as a YDA III at the Industry School in Rush, New York, near Rochester in October 2000. Plaintiff did not appear for an interview, effectively declining the position. Thereafter, his name was removed from the preferred list for positions in Monroe County. Item 59, ¶ 5. Plaintiff also declined a permanent full-time Grade 9 YDA II position at the Great Valley Residential Center in Cattaraugus County in October 2000, *id.,* ¶ 9, and a permanent full-time YDA III position in Cattaraugus County in June 2001. Item 41, ¶ 4, Exh. B. Defendant Baines was not employed at the Industry

School at the time plaintiff was offered a position at that facility, but was redeployed from Buffalo to a facility in Oatka, New York, in May 2003. Item 59, ¶ 7. Additionally, Ms. Delmarsh stated that upon the closing of a Buffalo facility in 1993, many Buffalo employees have commuted to Rochester facilities, including the Industry School. *Id.,* ¶ 8. Finally, had plaintiff been working in Buffalo in 2002 when one of the two remaining NYSOCFS facilities was closed, it would have resulted in plaintiff's redeployment either to Rochester or Salamanca in Cattaraugus County based on his seniority date. *Id.;* Item 41, ¶ 6.

## DISCUSSION

### 1. Baines' Motion for Summary Judgment

In support of his motion for summary judgment, Baines argues that plaintiff has failed to show that he was the victim of a pervasive campaign of racial harassment. Baines states that plaintiff alleges only five incidents of harassment occurring over a five-year period and, even if accepted as true, these isolated incidents do not establish the pervasive race-based harassment required by *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). Baines also argues that plaintiff has failed to show that he suffered an adverse employment action in retaliation for his protected conduct, or that he was constructively discharged.

#### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." A moving party is entitled to judgment as a matter of law if the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court, however, views all of the evidence presented in the light most favorable to the party against whom summary judgment is sought, and draws all reasonable inferences in his favor. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A genuine issue of material fact exists when there is sufficient evidence favoring the nonmoving party such that a jury could return a verdict in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party may not rest upon unsubstantiated allegations, conclusory assertions, or mere denials, but must set forth and establish specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). A metaphysical or other whimsical doubt concerning a material fact does not establish a genuine issue requiring trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 584. If there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

Plaintiff brings his claim for race discrimination under 42 U.S.C. § 1981 which provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts. . . as is enjoyed by white citizens. . . . ." 42 U.S.C. § 1981(a). This section outlaws "discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such

as employment . . . ." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004).[2] Plaintiff has also brought three separate claims pursuant to 42 U.S.C. § 1983, alleging that he was denied equal protection, substantive due process, and procedural due process based on his race and ethnicity. Finally, plaintiff has brought a claim under the NYSHRL for race discrimination. Plaintiff's section 1981 and 1983 claims and the NYSHRL claim are analyzed under the same standards as are used in Title VII cases, according to the burden-shifting framework laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) (in claims of employment discrimination under section 1981, courts apply the same standards as in Title VII cases); *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998) ("In analyzing whether conduct was unlawfully discriminatory for purposes of § 1983, we borrow the burden-shifting framework of Title VII claims."); *Hargett v. Nat'l Westminster Bank, USA*, 78 F.3d 836, 838 (2d Cir.) (analyzing section 1981 employment discrimination claim under burden-shifting test), *cert. denied*, 519 U.S. 824 (1996); *Brennan v. City of White Plains*, 67 F. Supp. 2d 362, 371-72 (S.D.N.Y.1999) (the legal standards governing claims under section 1983 and the New York Human Rights Law are the same as Title VII).

---

[2] The fact that plaintiff is not a member of a racial minority does not preclude recovery under section 1981. *See, e.g., O'Connor v. 11 West 30th Street Rest. Corp.*, 1995 WL 354904, at *6 (S.D.N.Y. June 13, 1995) (finding that white plaintiff's allegations of race-based discrimination were sufficient to state a claim under section 1981). The Supreme Court has held that section 1981 protects from racial discrimination "all persons within the jurisdiction of the United States," regardless of the person's race. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 285-87 (1976) (section 1981 explicitly applies to '"all persons," including Caucasians (quoting 42 U.S.C. § 1981)).

**B. Race Discrimination Under Section 1981**

In his First Cause of Action, brought pursuant to section 1981, plaintiff claims that he was subjected to a race-based hostile work environment and harassment in retaliation for his complaints about Baines, which finally resulted in his constructive discharge. To sustain a claim of a hostile work environment based on race, a plaintiff must produce evidence showing that his "workplace was permeated with discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotation marks and citations omitted); *Patterson v. County of Oneida*, 375 F.3d at 227. Courts must look to the totality of the circumstances to determine whether an environment is "hostile" or "abusive" and should consider the following nonexclusive list of factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Plaintiff's evidence, if any, must show that the conduct at issue created an environment that is both objectively and subjectively hostile. *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir. 1999). Plaintiff must demonstrate not only that he found the environment offensive, but that a reasonable person also would have found the environment to be hostile or abusive. *Harris*, 510 U.S. at 21-22.

Even when a plaintiff establishes that he was exposed to an objectively and subjectively hostile work environment, he must also demonstrate that the hostile work environment was caused by animus towards plaintiff as a result of plaintiff's race. *See*

*Sullivan v. Newburgh Enlarged Sch. Dist.*, 281 F. Supp. 2d 689, 704 (S.D.N.Y. 2003). "An environment that would be equally harsh for all workers, or that arises from personal animosity, is not actionable under the civil rights statutes." *Forts v. City of N.Y. Dep't of Corr.*, 2003 WL 21279439, at *4 (S.D.N.Y. June 4, 2003). "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." *Ennis v. Sonitrol Mgmt. Corp.*, 2006 WL 177173, at *9 (S.D.N.Y. Jan. 25, 2006) (citations omitted). On a motion for summary judgment, the question for the court is whether a reasonable factfinder could conclude, considering all the circumstances, that "the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d at 70 (internal quotation marks omitted; emphasis in *Whidbee*).

    Although this is a close case, the court concludes that plaintiff has raised a genuine issue of material fact with respect to his *prima facie* case of a hostile work environment based on race. Plaintiff points to three occasions when Baines directly referred to him in racial or ethnic terms (Baines called plaintiff a "stupid Polack" and told plaintiff to leave a training session and that locks were changed because plaintiff was white). Plaintiff also alleges that he heard Baines refer to other Caucasians in racially derogatory terms on two occasions (Baines referred to a former football teammate as a "big smart old white boy" and a visiting auditor as a "red neck white boy"). Additionally, Baines reportedly referred to plaintiff as a "white boy" to other co-workers. Plaintiff overheard some of the comments, while others were reported to him. When plaintiff complained about Baines' comments,

Baines attempted to foster race-based animosity against plaintiff among his co-workers at the ERC by suggesting that plaintiff's complaints would cause the closure of the facility.[3]

Plaintiff found the work environment to be subjectively hostile. Baines' conduct was humiliating and altered the plaintiff's ability to function in his position. While Baines' conduct cannot be characterized as constant, it could be seen as severe and pervasive. Accordingly, the court finds that a trier of fact could conclude that plaintiff was subjected to a hostile work environment and the motion to dismiss this claim must be denied.

Plaintiff also argues that Baines' harassment of him resulted in his constructive discharge. "[A]n employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Petrosino v. Bell Atlantic*, 385 F.3d 210, 229 (2d Cir. 2004) (citing *Terry v. Ashcroft*, 336 F.3d 128, 151-52 (2d Cir. 2003)). Here, plaintiff was not involuntarily forced to resign his position, but took a medical leave and applied for and received workers' compensation benefits. When his leave exceeded one year, plaintiff was terminated pursuant to New York Civil Service Law § 71. Following his termination in 1999, plaintiff was determined to be fit to return to work, his name was placed on a preferred list for re-employment, and he was offered comparable positions in Monroe and Cattaraugus Counties in 2000 but declined to accept them. To the extent that plaintiff argues that his decision not to accept these offers constitutes a constructive discharge, that argument is

---

[3] Plaintiff also complains that Baines referred to him as a "rat" and as "Pasterat" in a memorandum and on a telephone answering machine, invaded his personal space in a meeting in an attempt to intimidate him, and intentionally misplaced documents to create more work for plaintiff. The court notes that while these allegations may be indicative of Baines' personal animosity toward plaintiff, they could also be considered "race-based" given their context.

without merit. "An employee who fails to explore alternative avenues offered by her employer before concluding that resignation is the only option cannot make out a claim of constructive discharge." *Cooper v. Wyeth Ayerst Lederle,* 106 F. Supp. 2d 479, 495 (S.D.N.Y. 2000); *see also Gumbs v. Hall*, 51 F. Supp. 2d 275, 282 (W.D.N.Y.1999) (employee not constructively discharged where she rejected employer's offer of a lower-ranking position), *aff'd*, 205 F.3d 1323 (2d Cir. 2000).

Finally, plaintiff argues that Baines retaliated against him after he reported his concerns to NYSOCFS management. In order to make out a *prima facie* case of retaliation, plaintiff must demonstrate (1) participation in a protected activity known to the employer; (2) a materially adverse action which might dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection between the protected activity and the materially adverse employment action. *See Burlington Northern and Santa Fe Ry. Co. v. White*, ___ U.S. ___, 2006 WL 1698953, *10 (June 22, 2006). "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (citing 42 U.S.C. § 2000e-3). "Opposition" to discrimination includes complaints to management, as well as formal complaints. *Id*. (citing *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)). For purposes of this motion, the court will assume that plaintiff's complaints to NYSOCFS management about Baines constituted protected activity.

The court has carefully reviewed the submissions in response to the motion for summary judgment and finds that the record does not indicate that plaintiff suffered a

materially adverse action in retaliation for his protected conduct.  The deposition and affidavit contain allegations that Baines intentionally misplaced documents and fomented animosity toward plaintiff, used race-based epithets, and displayed unprofessional conduct toward plaintiff.  A retaliatory hostile work environment has been considered actionable when the incidents of harassment following complaints were sufficiently continuous and concerted to have altered conditions of the employee's employment.  *See Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d at 446.  Here, however, most of the instances that constitute the alleged hostile work environment gave rise to plaintiff's formal complaints against Baines and were not the result of plaintiff's complaints.  *See Thomas v. iStar Financial, Inc.*, ___ F. Supp. 2d ___, 2006 WL 1981756, *12 (July 7, 2006).  The record indicates that plaintiff was not deterred from making or supporting a charge of harassment in August 1997, shortly before taking medical leave in September 1997 (Item 51, Exh. A).  The remaining allegations do not constitute harassment of such a severe and continuous nature that it would have altered the conditions of plaintiff's employment.  Accordingly, to the extent that plaintiff seeks to allege a separate cause of action for retaliation under section 1981, the claim must be dismissed.

### C. Plaintiff's Section 1983 Claims

Plaintiff has also brought a claim of race discrimination under section 1983.  He alleges that he was denied equal protection of the law in violation of the Fourteenth Amendment to the Constitution, in that he was treated differently than other similarly situated employees.  Plaintiff may establish a *prima facie* case of race discrimination by showing:  1) that he belongs to a protected class; 2) that he was qualified for the position

he held; 3) that he suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  *See Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002).

The court finds that plaintiff has failed to establish that he suffered an adverse employment action.  Not every disciplinary action taken against an employee is an "adverse employment action;" rather, only a "'materially adverse change' in the terms and conditions of employment" is actionable under a disparate treatment theory.  *See Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).  Examples of materially adverse actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (quoting *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).

Here, plaintiff alleges that Baines attempted to foment hostility toward plaintiff in his co-workers, intentionally misplaced documents to create more work for plaintiff, changed the locks on an office door and file cabinets, ordered him to return from a training session in Rochester, and entered a meeting and invaded plaintiff's personal space in an effort to intimidate him.  None of these actions is an adverse employment action for purposes of a disparate treatment claim, and the section 1983 claim for race discrimination must be dismissed.

Plaintiff also alleges that he was deprived of substantive and procedural due process in violation of section 1983[4]. In his Third Cause of Action, plaintiff alleges that his alleged constructive discharge deprived him of property, including the "loss and conditions and privileges of employment . . . ." Item 1, ¶ 53. In his Fourth Cause of Action, plaintiff alleges that he was afforded neither a pre-deprivation nor a post-deprivation hearing regarding his alleged constructive discharge, resulting in the denial of procedural due process. The court previously determined that plaintiff failed to offer evidence that he was constructively discharged, and further finds that plaintiff was afforded all the process he was due. "It is well settled that a civil service employee is not deprived of due process if the employee is terminated without a pre-termination hearing pursuant to Section 71 of the Civil Service Law." *Santiago v. Newburgh Enlarged City Sch. Dist.*, 434 F. Supp. 2d 193, 198 (S.D.N.Y. 2006), *see also Holmes v. Gaynor*, 313 F. Supp. 2d 345, 358 (S.D.N.Y. 2004) (no pre-termination hearing required where employee terminated pursuant to § 71). Morever, the Civil Service Law provides post-termination due process rights, such as the right to demand to return to work or to contest a determination of unfitness to work, which satisfy the Fourteenth Amendment. *See Santiago*, 434 F. Supp. 2d at 198. Here, plaintiff was found fit to return to work, his name was placed on a preferred list for employment, and he was offered positions with the NYSOCFS, which he declined. Accordingly, plaintiff was not deprived of procedural due process.

Additionally, plaintiff has not established a violation of his substantive due process rights. The protections of substantive due process are available only against governmental

---

[4] These causes of action appear to be addressed to both defendants.

conduct which goes beyond the merely offensive and can be viewed as so outrageous as to "shock the conscience." *Smith ex rel. Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002). Moreover, courts within this Circuit require a showing that the employer's conduct, to be actionable, must constitute an abuse of power "unique to its role as a governmental entity." *Sussman v. New York City Health & Hosps. Corp.*, 1997 WL 334964, *12 (S.D.N.Y. June 16, 1997). Here, it is undisputed that plaintiff's complaints resulted in the investigation and sanction of Baines by the NYSOCFS. While plaintiff may have found this administrative response inadequate, it cannot be seen as an unreasonable or illegitimate exercise of government power. *See Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999), *cert. denied*, 529 U.S. 1098 (2000). Neither Baines' alleged actions in creating an arguably hostile work environment nor Johnson's alleged indifference to plaintiff's complaints is sufficiently egregious so as to shock the conscience. Additionally, plaintiff has not alleged that either defendant took any action against him that was uniquely governmental in nature. *See Perfetto v. Erie County Water Auth.*, 2006 WL 1888556, *10 (W.D.N.Y. July 7, 2006). Accordingly, plaintiff has not established a violation of substantive due process.

Defendant's Baines' motion for summary judgment is denied as to the hostile work environment claim.[5] In all other respects, the motion is granted.

---

[5] In his Fifth Cause of Action, plaintiff has alleged a violation of the NYSHRL. To the extent that plaintiff has pled a claim for a hostile work environment under the NYSHRL, that cause of action also survives the motion to dismiss.

**2. Johnson's Motion for Summary Judgment**

Plaintiff argues that although he was discriminated against by Baines, defendant Johnson knew of the discriminatory conduct but took no remedial action, and thus Johnson was personally responsible for the discrimination and plaintiff's constructive discharge. Plaintiff seeks reinstatement of employment with the NYSOCFS and an order that Baines be enjoined from future violations of plaintiff's rights. Johnson argues that as he was sued in his official capacity only, money damages are not available as against him on the grounds of Eleventh Amendment immunity. Defendant Johnson further argues that plaintiff is not entitled to the equitable relief of reinstatement in a section 1983 action pursuant to *A.A. v. Bd. of Educ.,* 196 F. Supp. 2d 259, 267 (E.D.N.Y. 2002). As he can provide plaintiff no relief, Johnson argues that he is a nominal defendant only and should be dismissed from the case. Additionally, Johnson argues that as plaintiff refused two offers of employment with NYSOCFS, he should be estopped from seeking lost wages from October 1, 2000.

A claim for money damages against a state official acting in his official capacity is barred by the Eleventh Amendment, *see Edelman v. Jordan,* 415 U.S. 651 (1974), and a federal court cannot enjoin violations of state law. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106 (1984). A claim for injunctive relief is only proper where a plaintiff seeks prospective relief to remedy an ongoing violation of federal law. *See Ex parte Young,* 209 U.S. 123 (1908). Whether a litigant's claim falls under the *Ex parte Young* exception to the Eleventh Amendment's bar against suing a state is a "straightforward inquiry" that asks "whether [the] complaint alleges an ongoing violation of

federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)). "[A] continuing violation may be found 'where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'" *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994); *see also Annis v. County of Westchester*, 136 F.3d 239, 246 (2d Cir. 1998).

Here, plaintiff has alleged no ongoing violations of federal law, only discrete acts of past discrimination and retaliation by defendant Baines. It is undisputed that Baines was investigated by the NYSOCFS, found guilty of various violations, and fined by the agency. It is well settled that "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *cert. denied*, 511 U.S. 1052 (1994). While reinstatement is generally regarded as propsective injunctive relief, *see Dwyer v. Reagan*, 777 F.2d 825, 836 (2d Cir. 1985), reinstatement to an employment position as compensation for past instances of allegedly discriminatory conduct is not considered prospective equitable relief pursuant to *Ex parte Young*. *See A.A. v. Board of Educ.,* 196 F. Supp. 2d 259, 267 (E.D.N.Y. 2002). Here, plaintiff has failed to allege a continuing violation of federal law, and his claim against defendant Johnson is not proper under *Ex parte Young*. Accordingly, Johnson's motion for summary judgment is granted.

## CONCLUSION

Defendant Johnson's motion for summary judgment is granted, and the complaint is dismissed as against him.  Defendant Baines' motion for summary judgment is granted in part and denied in part.  The Second Cause of Action, alleging the denial of equal protection pursuant to 42 U.S.C. § 1983, and the Third and Fourth Causes of Action, alleging the deprivation of procedural and substantive due process, are dismissed.  The motion for summary judgment is denied with respect to the First Cause of Action, alleging a hostile work environment pursuant to 42 U.S.C. § 1981.  The Fifth Cause of Action, alleging discrimination pursuant to the NYSHRL, is dismissed to the extent that plaintiff alleges disparate treatment, but the motion is denied to the extent that plaintiff alleges a hostile work environment.  Counsel for plaintiff and defendant Baines shall meet with the court on  September 11, 2006, at 10 a.m. to set a further schedule.

So ordered.

                                                  \s\ John T. Curtin
                                                  JOHN T. CURTIN
                                      United States District Judge

Dated: September     1  , 2006
p:\opinions\00-369.aug1006